**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

RONALD A. DOOLEY, *et al.*,        :        Case No. 3:12-cv-290

      Plaintiffs,

                                        Magistrate Judge Michael R. Merz

   vs.        :

WELLS FARGO BANK,
NATIONAL ASSOCIATION[1]

      Defendant.        :

**DECISION AND ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS**

     This case is before the Court on Defendant's Motion to Dismiss the Amended Complaint (Doc. No. 11). Plaintiffs oppose the Motion (Doc. No. 12) and Defendant has filed a Reply in support (Doc. No. 13).

     A motion to dismiss involuntarily is a dispositive motion on which a Magistrate Judge is ordinarily required to file a report and recommendations. 28 U.S.C. § 636(b). However, the parties here unanimously consented to plenary magistrate judge jurisdiction under 28 U.S.C. § 636(c) in their Rule 26(f) Report (Doc. No. 5) and continued that consent in place when the case was transferred from Magistrate Judge Newman to Magistrate Judge Merz (See Order, Doc. No.

---

[1] Defendant was misnamed in the original Complaint as "Wells Fargo Bank, National Association." The parties agree that the correct Defendant is "Wells Fargo Bank, National Association, successor by merger to Wells Fargo Bank Minnesota, National Association, f/k/a Norwest Bank Minnesota, National Association, solely in its capacity as Trustee for Provident Bank Home Equity Loan Asset-Backed Certificates, Series 1999-3." *See* Doc. No. 10; Doc. No. 11 at PageID 127. However, Plaintiffs did not correct this error when filing their Amended Complaint.

1

15).

This case involves claims brought by mortgagors, Plaintiffs Ronald and Geraldine Dooley ("Dooleys" or "Plaintiffs"), against their bank-mortgagee, Defendant Wells Fargo Bank, National Association ("Wells Fargo" or "Defendant"), concerning the servicing of their mortgage loan and subsequent foreclosure on their property.[2]  Plaintiffs claim Wells Fargo, acting through a loan servicer, is liable for falsely representing that they would qualify for a loan modification program, and for not promptly responding to correspondence regarding short sale offers.  Plaintiffs assert claims of negligence (First Cause of Action), fraud (Second Cause of Action), intentional misrepresentation (Third Cause of Action), intentional infliction of emotional distress (Fourth Cause of Action), and violation of the Ohio Consumer Sales Practices Act (Fifth Cause of Action). *See* Plaintiffs' Amended Complaint (Doc. No. 10).

## I.  BACKGROUND

According to the Amended Complaint,[3] on August 26, 1999, Plaintiffs executed a promissory note and granted The Provident Bank a mortgage on their Beavercreek, Ohio, real property.  *Id.* ¶ 3.  Wells Fargo subsequently assumed and/or purchased that mortgage loan from PNC Bank.  *Id.*  At all times relevant to this case, Litton Loan Servicing, LLC ("Litton") serviced

---

[2] This case was removed from the Greene County, Ohio Court of Common Pleas on the basis of diversity jurisdiction.  *See* 28 U.S.C § 1332; Doc. No. 1.  Plaintiffs are citizens of Ohio; Defendant is a citizen of South Dakota; and Plaintiffs seeks $76,000.00 in damages in the Amended Complaint.  *Id.*; Doc. No. 10.

[3] The Court construes the Amended Complaint in the light most favorable to the Plaintiffs, and "accept[s] all well-pleaded factual allegations as true," as required in ruling on a Rule 12(b)(6) motion to dismiss. *Ashland, Inc., v. Oppenheimer & Co.*, 648 F.3d 461, 467 (6th Cir. 2011).

the loan, acting as agent for Wells Fargo. *Id.* ¶ 4. Wells Fargo filed a foreclosure action against Plaintiffs on August 1, 2011, with respect to their Beavercreek property. *Id.* ¶ 6.

Plaintiffs claim Wells Fargo prolonged and delayed the mortgage foreclosure process in order to charge Plaintiffs additional fees and penalties, and caused them to incur additional expenses. *Id.* ¶¶ 15, 21, 25, 26. Plaintiffs specifically allege that Wells Fargo, by and through Litton, attempted to enroll Plaintiffs into a loan modification program -- the Home Affordable Refinance Program ("HARP") -- with full knowledge that Plaintiffs would not qualify for the program. *Id.* ¶ 7.

Additionally, Plaintiffs assert Wells Fargo, by and through Litton, "fail[ed] to answer repeated correspondence by [Plaintiffs] regarding two [] short sale home purchase contracts." *Id.* ¶ 8. As a result, there was no short sale of Plaintiffs' property. *Id.* ¶ 9. Plaintiffs aver they consequently "incurred additional costs including but not limited to additional fees …, additional insurance premiums paid to maintain the property, [and] additional maintenance expenses." *Id.* Plaintiffs further allege this resulted in "a negative effect on [their] credit rating." *Id.*

## II. ANALYSIS

The Motion to Dismiss was made under Fed. R. Civ. P. 12(b)(6) whose purpose is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993), *citing Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 279 (6th Cir. 1987). Put another way, "[t]he purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or

merits of the case." Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: Civil 2d §1356 at 294 (1990).

While Rule 8(a) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must "construe the complaint in the light most favorable to [Plaintiffs]" and "accept all well-pleaded factual allegations as true." *Ashland, Inc., v. Oppenheimer & Co.,* 648 F.3d 461, 467 (6th Cir. 2011). Although "detailed factual allegations" are not required, "a formulaic recitation of the elements of a cause of action" is insufficient to state a plausible claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is plausible on its face if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility is not the same as probability, but rather "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011).

A federal court exercising supplemental or diversity subject matter jurisdiction over state law claims must apply state substantive law to those claims. 28 U.S.C. §1652; *Gasperini v. Center for Humanities, Inc.*, 528 U.S. 415, 427, n. 7 (1996); *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), overruling *Swift v. Tyson*, 41 U.S. 1 (1841)(Story, J., holding that "the laws of the several states" in the Judiciary Act of 1789 means only the statutory law of the States). In applying state law, the Sixth Circuit follows the law of the State as announced by that State's supreme court. *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008); *Ray Industries, Inc. v. Liberty Mut. Ins. Co.*, 974 F.2d 754, 758 (6th Cir. 1992); *Miles v. Kohli & Kaliher Assocs.,*

917 F.2d 235, 241 (6th Cir. 1990). "Where the state supreme court has not spoken, our task is to discern, from all available sources, how that court would respond if confronted with the issue." *Id.; In re Akron-Cleveland Auto Rental, Inc.,* 921 F.2d 659, 662 (6th Cir. 1990); *Bailey v. V & O Press Co.,* 770 F.2d 601 (6th Cir. 1985); *Angelotta v. American Broadcasting Corp.,* 820 F.2d 806 (6th 1987). Under *Erie Railroad*, the Court applies Ohio law to judge the substantive sufficiency of Plaintiffs' claims.

### A.   Negligence (First Cause of Action)

Wells Fargo first argues that Plaintiffs' negligence claim is barred by the economic loss doctrine, which prevents recovery of damages in tort for purely economic loss. *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St. 3d 40 (1989). The Court agrees. "[T]he well-established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable." *Id.* (citation omitted). The Supreme Court of Ohio explained the rationale behind the economic loss rule as follows:

> This rule stems from the recognition of a balance between tort law, designed to redress losses suffered by breach of a duty imposed by law to protect societal interests, and contract law, which holds that parties to a commercial transaction should remain free to govern their own affairs. Tort law is not designed to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement. That type of compensation necessitates an analysis of the damages which were within the contemplation of the parties when framing their agreement. It remains the particular province of the law of contracts.

*Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc.*, 106 Ohio St. 3d 412, 414, 2005 Ohio 5409 ¶ 6 (2005) (internal quotation marks and citations omitted). Accordingly, "Ohio law prevents the

recovery of purely economic losses in a negligence action … where recovery of such damages is not based upon a tort duty independent of contractually created duties." *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 569 (6th Cir. 2006) (*quoting Corporex*, 106 Ohio St. 3d at 415).

Plaintiffs here allege purely economic damages for their negligence claim: additional costs/fees, insurance premiums, maintenance expenses, and "a negative effect" on their credit rating.[4]  (Amended Complaint, Doc. No. 10, ¶ 9.)  Further, Plaintiffs' negligence claim arises out of contractual agreements -- their mortgage loan and promissory note which were subsequently assigned to Wells Fargo.  (Indeed, Plaintiffs attach these documents as exhibits in support of their Amended Complaint.  *Id.* at PageID 112-26.  Plaintiffs claim Wells Fargo was negligent because it "breached its duty of care, by and through its agent, Litton []" by: (1) "attempting to enroll [them] into [HARP], with full knowledge that [they] would not qualify for this modification program"; and (2) "failing to answer repeated correspondence … regarding two [] short sale home purchase contracts."  *Id.* at ¶¶ 7-8.

In Ohio, "the relationship of debtor and creditor, without more, is not a fiduciary relationship," and "a bank and its customers stand at arm's length in negotiating terms and conditions of a loan."  *Blon v. Bank One, Akron, N.A.*, 35 Ohio St. 3d 98, 100-102 (1988) (citations omitted).  Accordingly, because Plaintiffs have failed to identify a tort duty under Ohio law -- one independent from contractually created duties -- that was breached by Wells Fargo, Plaintiffs' negligence claim fails as a matter of law.  *See Pavolich*, 435 F.3d at 569-70; *425*

---

[4] Damages are characterized as either personal injury, property damage, or economic loss.  *HDM Flugservice GmbH v. Parker Hannifin Corp.*, 332 F.3d 1025, 1028 (6th Cir. 2003); *Chemtrol Adhesives, Inc., v. American Mfrs. Mut. Ins. Co*, 42 Ohio St. 3d 40, 43 (1989).  Although this issue is not disputed by Plaintiffs, the Court notes that any negative effect on Plaintiffs' credit rating is considered economic loss.  *Accord, Rhodes v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 156500 at *90, 2012 WL 5363424 at *30 (N.D. Tex. Oct. 31, 2012); *Starks Feed Co. v. Consol. Badger Coop., Inc.*, 592 F. Supp. 1255, 1256-1257 (N.D. Ill. 1984).

*Beecher, LLC v. Unizan Bank*, 2010 Ohio 412, ¶¶ 44-54, 186 Ohio App. 3d 214, 228-230 (Ohio

App. 10th Dist. 2010); *accord Ogle v. BAC Home Loans Servicing LP*, 2013 U.S. Dist. LEXIS

19986 at *27, 2013 WL 592303, at *9 (S.D. Ohio Feb. 14, 2013) (dismissing a "negligent

servicing" claim against a bank, as it was based in contract law, not tort law); *Wells Fargo Bank,*

*N.A. v. Favino*, 2011 U.S. Dist. LEXIS 35618 at *41, 2011 WL 1256771, at *14 (N.D. Ohio Mar.

31, 2011) ("[A] claim that a bank is negligent administering a loan is an action in contract and not

a tort action"); *Nichols v. Chicago Title Ins. Co.*, 107 Ohio App. 3d 684, 696 (Ohio App. 8th Dist.

1995) (finding plaintiffs failed to state a negligence claim against a lender for negligent

administration of their loan, as their claim was based in contract, not tort); *Schwartz v. Bank One,*

*Portsmouth, N.A.*, 84 Ohio App. 3d 806, 812 (Ohio App. 4th Dist.1992) (finding a lender's duty

with respect to interest rates "arise solely out of the written contract, and are not imposed by law

independent of the contract").

### B. Fraud and Intentional Misrepresentation (Second and Third Causes of Action)

In their Second and Third Causes of Action, Plaintiffs assert fraud and intentional

misrepresentation claims.[5]  Plaintiffs must satisfy the following elements to show that Wells

Fargo is liable for fraud/intentional misrepresentation: "[1] a representation or, where there is a

duty to disclose, concealment of a fact; [2] which is material to the transaction at hand; [3] made

---

[5] These are essentially the same claims: Litton falsely represented to Plaintiffs that they would qualify for HARP.   (Doc. No. 10 at PageID 108-09.)  Where an alleged intentional misrepresentation forms the basis for a cause of action for fraud, as in the instant case, the terms "fraud" and "intentional misrepresentation" are used interchangeably by Ohio courts.   *Applegate v. Nw. Title Co.*, 2004 Ohio App. LEXIS 1297 at *2 n.2, 2004 WL 585592 at *1 n.2 (Ohio App. 10th Dist. 2004); *see also Equal Justice Found. v. Deutsche Bank Trust Co. Ams.*, 412 F. Supp. 2d 790, 797-98 (S.D. Ohio 2005).

falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; [4] with the intent of misleading another into relying upon it; [5] justifiable reliance upon the representation or concealment; and [6] a resulting injury proximately caused by the reliance." *Russ v. TRW, Inc.*, 59 Ohio St. 3d 42, 49 (1991) (brackets added; punctuation altered).

Fed. R. Civ. P. 9(b) requires a party asserting a fraud or a mistake claim to "state with particularity the circumstances constituting fraud or mistake." Rule 9(b) should be applied in accordance with the general pleading requirements in Rule 8. *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988). The heightened pleading standard under Rule 9(b) requires Plaintiffs to "allege the time, place, and content of the alleged misrepresentation on which [they] relied; the fraudulent scheme; the fraudulent intent of [Wells Fargo]; and the injury resulting from the fraud." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003) (brackets added). A fraud claim will be dismissed under Rule 12(b)(6) if it fails to comply with Rule 9(b)'s heightened pleading standard. *United States ex rel. Howard v. Lockheed Martin Corp.*, 499 F. Supp. 2d 972, 976 (S.D. Ohio 2007).

Plaintiffs make one factual allegation to support their fraud/intentional misrepresentation claim: Wells Fargo, acting through Litton, represented to Plaintiffs that they would be eligible for, and attempted to enroll them in, HARP "with full knowledge that [they] would not qualify for this program." (Doc. No. 10 ¶¶ 12-22.) By not specifically alleging the content, time, and place of the alleged statements by Litton regarding Plaintiffs' eligibility for HARP, Plaintiffs have failed to satisfy the heightened pleading requirements of Rule 9(b). *Accord, McCubbins v. BAC Home*

*Loans Servicing, L.P.*, 2012 U.S. Dist. LEXIS 5620 at *10-13, 2012 WL 140218, at *4-5 (S.D. Ohio Jan. 18, 2012).[6]

### C. Intentional Infliction of Emotional Distress (Fourth Cause of Action)

In their Fourth Cause of Action, Plaintiffs assert a claim for intentional infliction of emotional distress. To prevail on such a claim under Ohio law, Plaintiffs must prove the following: (1) Wells Fargo "intended to cause emotional distress, or knew or should have known that [its] actions would result in … serious emotional distress"; (2) Wells Fargo's conduct was "extreme and outrageous"; (3) Wells Fargo's actions "proximately caused [their] emotional injur[ies]"; and (4) Plaintiffs "suffered serious emotional anguish." *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995) (*citing Hanly v. Riverside Methodist Hosps.*, 78 Ohio App. 3d 73, 82 (Ohio App. 10th Dist. 1991)).

To satisfy the "extreme and outrageous conduct" requirement, Plaintiffs must show Wells Fargo's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager v. Local Union 20, Teamsters*, 6 Ohio St. 3d 369, 374 (1983), *abrogated on other grounds by Welling v. Weinfeld*, 113 Ohio St. 3d 464 (2007). In support of their intentional infliction of emotional distress claim, Plaintiffs allege that Wells Fargo "committed a series of intentional and untrue representations," and "prolonged and delayed the mortgage foreclosure

---

[6] It is unclear which loan modification program in which Litton allegedly attempted to enroll Plaintiffs -- the Home Affordable Modification Program ("HAMP") or the Home Affordable Refinance Program ("HARP"). In their Amended Complaint, Plaintiffs allege it was HARP. *See* doc. 10. However, Wells Fargo refers to HAMP in its instant Motion. (Doc. 11 at PageID 132-33.) In Plaintiffs' opposition memorandum, they likewise refer to HAMP. *See generally* Doc. No. 12.

process" by not responding to Plaintiffs' short sale requests and attempting to enroll them in a loan modification program.  (Doc. No. 10 ¶¶ 24-26.)  Even viewing the amended complaint in the light most favorable to Plaintiffs, these allegations do not come close to meeting Ohio's narrow definition of "extreme and outrageous" conduct.  *See Bolander v. BP Oil Co.*, 128 F. App'x 412, 419 (6th Cir. 2005).

Additionally, Plaintiffs have failed to allege that they suffered "severe and debilitating" emotional injuries, as required for an intentional infliction of emotional distress claim.  *See Banford v. Aldrich Chem. Co.*, 2010 Ohio 2470 ¶ 29, 126 Ohio St. 3d 210, 216 (2010).  Such emotional distress "may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Paugh v. Hanks*, 6 Ohio St. 3d 72, 78 (1983).  "A non-exhaustive litany of some examples of serious emotional distress … include traumatically induced neurosis, psychosis, chronic depression, or phobia."  *Id.*  Here, Plaintiffs merely make a conclusory statement that they "have suffered emotional damages."  (Doc. 10 ¶ 27.)  As Plaintiffs have failed to specify the type and extent of their alleged emotional injuries, their intentional infliction of emotion distress claim fails on that basis as well.  Accordingly, even viewing the Amended Complaint in the light most favorable to Plaintiffs, they have failed to state a claim for intentional infliction of emotional distress upon which relief can be granted.  *Accord Wells Fargo*, 2011 U.S. Dist. LEXIS 35618 at *31-34.

### D.   Ohio Consumer Sales Practices Act (Fifth Cause of Action)

Plaintiffs further seek relief under the Ohio Consumer Sales Practices Act, Ohio Revised Code §§ 1345.01 *et seq.* ("OCSPA").   As Wells Fargo correctly argues, however, it is not subject to liability under OCSPA because it is a "financial institution."   (Doc. No. 11 at PageID 136-38.) OCSPA applies to "consumer transactions," which are statutorily defined to exclude transactions between "financial institutions" and their customers.   Ohio Rev. Code §§ 1345.01(A), 1345.02, 5725.01(A).   Wells Fargo, a national bank, is a financial institution.   *See Reagans v. Mountainhigh Coachworks, Inc.*, 2008 Ohio 271 ¶ 33, 117 Ohio St. 3d 22, 30 (2008). Accordingly, Plaintiffs have failed to state a claim against Wells Fargo under OCSPA.   *Accord Walter v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 25005 at *9, 2012 WL 641949 at *4 (S.D. Ohio Feb. 28, 2012); *Hammond v. Citibank, N.A.*, 2011 U.S. Dist. LEXIS 109818 at *24-25, 2011 WL 4484416, at *8 (S.D. Ohio Sept. 27, 2011); *King v. CitiMortgage, Inc.*, 2011 U.S. Dist. LEXIS 79722, at *29-30, 2011 WL 2970915 at *11 (S.D. Ohio July 20, 2011); *Wells Fargo Bank*, at 2011 U.S. Dist. LEXIS 35618 at *24-26 (dismissing OSCPA claims against bank-defendants under Rule 12(b)(6)).[7]

---

[7] Plaintiffs' conclusory contention -- that Wells Fargo is liable under OSCPA based on the actions of its purported loan servicer agent, Litton -- is unpersuasive.   *See* Doc. No. 12 at PageID 155-56.   Although a bank may be liable under OSCPA when acting in the capacity of a mortgage loan servicer, *see, e.g., JP Morgan Chase Bank, N.A. v. Horvath*, 862 F. Supp. 2d 744, 750 (S.D Ohio 2012), such facts are not alleged here.   In fact, Plaintiffs claim just the opposite.   By attempting to assert liability of Wells Fargo solely on agency theory, they are implicitly conceding that Wells Fargo did not itself act in a loan servicing capacity. *Accord Castellanos v. Deutsche Bank*, 2012 U.S. Dist. LEXIS 93455 at *15-18, 2012 WL 2684968 (S.D. Ohio July 6, 2012) (finding there were insufficient facts to infer that a financial institution was acting as a mortgage servicer to impose liability under OCSPA).

### III.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiffs' Amended Complaint (Doc. No. 11) is **GRANTED**.   The Clerk will enter judgment dismissing the Amended Complaint without prejudice for failure to state a claim upon which relief can be granted.

April 19, 2013.

s/ *Michael R. Merz*
United States Magistrate Judge